UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TRACY JONES DAWSON, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:19-cv-00755-RDP |
| } | |
| LIBERTY INSURANCE } | |
| CORPORATION, INC., d/b/a/ LIBERTY } | |
| MUTUAL INSURANCE, } | |
| } | |
| Defendant. | |

## MEMORANDUM OPINION

This case is before the court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. # 22). The Motion is fully briefed (Docs. # 24, 25) and is ripe for review. After careful consideration, the court concludes that Defendant's Motion (Doc. # 22) is due to be granted.

**I.  Background**[1]

This case stems from an insurance company's denial of coverage for items taken from a marital home by a named insured. Plaintiff Tracy Jones Dawson ("Plaintiff" or "Ms. Dawson") and Andrew Dawson ("Mr. Dawson") (a non-party to this action) were married in 2012. (Doc. # 21, ¶3). They separated in June 2016, and a divorce action was initiated the same year. (*Id.*). A Final Judgment of Divorce was entered on July 13, 2018. (*Id.* at ¶4). The divorce decree granted Plaintiff sole possession and ownership of the marital home. (*Id.* at ¶5). However, Mr. Dawson retained an "equitable interest in any excess sales proceeds from the real estate [].") (Doc. # 24 at

---

[1] For purposes of ruling on Defendant's Motion to Dismiss, the court treats the factual allegations of the Complaint (Doc. # 21) as true, but not its legal conclusions. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009).

6). Prior to the final divorce decree, Mr. Dawson vacated the marital home. (*Id.* at ¶6). In January or February 2018, Mr. Dawson was permitted to return to the marital home and gather any remaining personal property. (*Id.* at ¶¶7–8).

On April 30, 2018, Mr. Dawson returned to the marital home, threw a brick through a window, and burglarized the house. (*Id.* at ¶9). According to Plaintiff, Mr . Dawson "t[ook] items far above and beyond what the divorce judgment [] awarded him." (*Id.*). Subsequently, Plaintiff made a claim for theft on her homeowner's insurance policy, issued by Defendant Liberty Mutual Insurance ("Defendant" or "Liberty Mutual").[2] (*Id.* at ¶12).

The policy, issued to Plaintiff and Mr. Dawson lists them both as named insureds, and was in effect from December 8, 2017, through September 28, 2018. (Doc. # 22, at 1)[3]. The policy provides, in relevant part, as follows:

### DEFINITIONS

> In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household.
>
> …
>
> 3. "Insured" means you and residents of your household who are:
>    a. Your relatives; or
>    b. Other persons under the age of 21 and in the care of any person named above.
>
> ### SECTION I – PERILS INSURED AGAINST
> …

---

[2] The policy at issue is Liberty Mutual homeowner's policy no. H37-2580136373. (Doc. # 22, Exh. A).

[3] Plaintiff did not attach a copy of the policy at issue to her Second Amended Complaint. (Doc. # 21). However, the policy is central to Plaintiff's claims and is referenced throughout her complaint. (*Id.* at 3, ¶¶ 10–13). There is no issue about the policy's authenticity. As such, the court may consider the policy as part of a motion to dismiss, without converting it to a summary judgment motion. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

**COVERAGE C – PERSONAL PROPERTY**

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I – EXCLUSIONS.

…

**9. Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.
This peril does not include loss caused by theft:
    a. Committed by an "insured";
…

**SECTION I – EXCLUSIONS**

h. **Intentional Loss**

We do not provide coverage for any loss arising out of any act committed by or at the direction of an "insured" with the intent to cause a loss. However, if you commit an act with the intent to cause a loss, we will provide coverage to an innocent "insured" victim of domestic abuse, as defined in the "Domestic Abuse Insurance Protection Act", to the extent of that person's interest in the property when the damage is proximately related to and in furtherance of domestic abuse.

(Doc. # 22, Exh. A).

According to Plaintiff, "Liberty Mutual was [] aware of the divorce judgment during the claim process, and knew that Mr. Dawson had no right to the property, and that the property belonged to [Plaintiff] and her daughter." (Doc. # 21 at ¶¶11–12).). Despite this knowledge, Liberty Mutual denied Plaintiff's claim. (*Id.* at ¶13). Alternatively, Plaintiff pleads that "Mr. Dawson denies that he took items not belonging to him. If he is correct, there is no justification for Liberty Mutual denying [Plaintiff's] claim for theft." (*Id.* at ¶14). In this alternative pleading, Plaintiff implies that an unidentified person broke in and burglarized her home. (*Id.*).

Plaintiff filed this action on April 16, 2019, in Jefferson County Circuit Court. (Doc. # 1, Exh. 1 at 6). According to Plaintiff, Liberty Mutual's denial of her claim constitutes breach of contract and bad faith. (Doc. # 21 at 3–5, ¶¶15-23). Defendant was served on April 24, 2019, and

3

removed this case on May 17, 2019. (*Id.*). Plaintiff has since amended her complaint twice. (Docs. # 6, 21). On August 14, 2019, Defendant filed the instant Motion to Dismiss. (Doc. # 22). For the reasons discussed below, Defendant's Motion is due to be granted.

## II. Standard of Review

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Having said that, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

The Supreme Court has recently identified "two working principles" for a district court to use in applying the facial plausibility standard. First, in evaluating motions to dismiss, the court

4

must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions when they are "couched as [] factual allegation[s]." *Iqbal*, 556 U.S. 679. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* The Court has also instructed that application of the facial plausibility standard involves two steps. Under prong one, the court must determine the scope and nature of the factual allegations that are well-pleaded and assume their veracity; and under prong two, the court must proceed to determine the claim's plausibility given the well-pleaded facts. That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Id.* If the district court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Id.*

Where a plaintiff refers to documents in the complaint, and those documents are central to the plaintiff's claim and not challenged as to authenticity "the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

**III.    Analysis**

In this Motion, Defendant argues the policy exclusions preclude its performance under the contract. (Doc. # 22 at 7). Further, Defendant argues that because Plaintiff's breach of contract claim is not viable, her bad faith claim necessarily fails. (*Id.* at 9). The court first addresses Plaintiff's breach of contract claim, and then turns to the bad faith claim.

5

### a. Count I – Breach of Contract

Under Alabama law, the elements of a breach of contract claim are: "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (citations omitted). The parties do not dispute that there was a valid contract binding the parties. (Doc. # 22, Exh. A). Nor do they dispute Plaintiff's performance under the contract or resulting damages. Rather, the instant Motion hinges on Defendant's alleged "non-performance" under the contract. *Shaffer,* 29 So. 3d at 880. Defendant argues that Plaintiff's breach of contract claim is due to be dismissed because the policy does not cover theft by a named insured, the intentional loss exclusion precludes coverage for Plaintiff's claim, and Plaintiff's alternative pleading does not bring her claim within the policy's coverage. (Doc. # 22 at 4-11). Because of the way Plaintiff has presented her claims and arguments, the court addresses these arguments in a different order, and first analyzes Plaintiff's purported alternative pleading.

### i. Alternative Pleading

Plaintiff contends that because her complaint contains an alternative allegation, "[t]he [c]ourt's inquiry should, by all rights, stop right here". (Doc. # 24 at 4). According to Federal Rule of Civil Procedure 8(d)(2), "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."

Plaintiff's alternative pleading is found in a single sentence in her Second Amended Complaint: "Mr. Dawson denies that he took items not belonging to him. If he is correct, there is no justification for Liberty Mutual denying Ms. Dawson's claim for theft." (Doc. # 21, ¶ 14). In her responsive briefing, Plaintiff argues that Defendant's Motion to Dismiss is precluded by Rule

8(d)(2), "[i]f Mr. Dawson did not commit any theft of Ms. Dawson's property, then the burglary, neither [sic] of these exclusions applies and under Fed. R. Civ. P. 8(d)(2) 'the pleading is sufficient' because of the alternative statements of the claim is sufficient." (Doc. # 24 at 4).

While Plaintiff is entitled to plead in the alternative under Rule 8(d)(2), she has failed to properly do so here. Her statement that "Mr. Dawson denies that he took items not belonging to him" does not constitute an alternative claim or statement of a claim. Plaintiff has merely alleged that Mr. Dawson denies he broke into the house and/or he only took items he believed belonged to him. It is important to note what Plaintiff does not allege. Plaintiff does not assert that a different, unidentified person -- that is, a non-party to the insurance agreement -- broke into the marital home and stole her belongings. Nor does Plaintiff deny that Mr. Dawson that he took her belongings. Rather, Plaintiff's "alternative pleading" is not alternative at all. Plaintiff's pleading language merely indicates that Mr. Dawson broke into Plaintiff's home, but that he (Mr. Dawson) denies that he did

Plaintiff volunteered to amend her Second Amended Complaint in responsive briefing. "While it seems unnecessary given the evidentiary standard at the pleading stage, if the court were to determine that it is necessary to specifically plead that someone else must have stolen [Plaintiff's] property if Mr. Dawson did not, Plaintiff would gladly file an amended pleading." (Doc. # 24 at 3, n. 1). Defendant argues that Plaintiff is judicially estopped from asserting that someone else stole Plaintiff's property due to representations she made in filings during her divorce action. (Doc. # 25 at 2). "Plaintiff cannot amend her Complaint (for the third time) through a footnote in response to Liberty's dispositive motion, particularly where she has taken a contrary position ion this and other proceedings." (*Id.* at 3).

As Plaintiff has not properly alleged (in the amended complaint) that another, unidentified person was responsible for her loss, Defendant's judicial estoppel argument is premature, at best. If Plaintiff, in fact, actually makes this allegation in her third amended complaint Defendant may raise a judicial estoppel argument in a subsequent motion to dismiss. However, in doing so, Defendant will do well to heed the instructions of the Eleventh Circuit in *Smith v. Haynes & Haynes P.C.,* 940 F.3d 635 (11th Cir. 2019) (addressing judicial estoppel). In any event, because Plaintiff's current alternative pleading does not bring her claim within the policy, the court will assess her breach of contract claim by continuing to analyze the theft peril provision.

### ii. Theft by a Named Insured

Here, Defendant's contend that the policy language, on its face, forecloses Plaintiff's claim because the policy excludes coverage for theft by a named insured. To assess this argument, the court must examine the language of the policy.

The policy at issue lists both Plaintiff and Mr. Dawson as named insureds. (Doc. # 22, Exh. A, at 2). The policy was in effect from December 8, 2017, through September 28, 2018. (*Id.*). Plaintiff alleges that theft occurred "[o]n or about April 30, 2018," a date clearly within the coverage period. (Doc. # 21 at 3, ¶9).

The policy includes coverage for multiple perils, including theft. (Doc. # 22, Exh. A, at 13–14). Coverage for theft is defined as "attempted theft and loss of property from a known place when it is likely the that property has been stolen." (*Id.* at 14). However, the policy "does not include loss caused by theft . . . [c]omitted by an insured." (*Id.*). Plaintiff expressly alleges that her loss was caused by a named insured (Mr. Dawson.). (Doc. # 21). To be sure, "insured" is defined by the policy as "you and residents of your household . . . ." (Doc. # 22, Exh. A. at 8). In turn, "you" is defined as "the 'named insured' shown in the Declarations . . . ." (Id.). According to the

8

policy declarations, "Andrew F. Dawson" and "Tracy Dawson" are listed as the "named insured." (*Id.* at 2). Thus, it is undisputed that Mr. Dawson is a named insured under the terms of the contract.

Because the theft provision of the policy expressly disallows coverage for theft committed by a named insured, the policy at issue does not provide coverage for a theft committed by Mr. Dawson. *See Gibson v. Liberty Mut. Group*, 129 F. App'x 94, 95–96 (5th Cir. 2005) (affirming trial courts holding that a homeowner's insurance policy expressly excluded loss cause by theft committed by a named insured, when it was undisputed plaintiff's estranged husband was a named insured and committed the purported theft); *Langer v. Liberty Mut. Fire Ins. Co.*, No. CV095033096S, 2010, WL 4886404, at *1–2 (Conn. Sup. Ct. Nov. 8, 2010) (granting summary judgment to defendant on the breach of contract claim because the undisputed facts of the case showed that the purported theft was committed by a named insured and "any such loss might be the subject of a domestic relations dispute but is not covered by the policy at issue, which explicitly excludes coverage for a "theft" perpetrated by, or at the direction of, a named insured.").

To be sure, Plaintiff does not dispute that Mr. Dawson is a named insured under the Policy. Rather, Plaintiff contends that Mr. Dawson had no "insurable interest" in the property at the time of the loss, and as such, cannot be an "insured" on the policy. (Doc. # 24 at 4). As best the court can discern, Plaintiff's argument can be summarized as follows: the Dawsons' divorce was finalized on July 13, 2018; prior to that, Mr. Dawson came to the house in February 2018 and retrieved the property awarded to him in the divorce decree; Mr. Dawson returned to the marital home in April 2018, threw a brick through a window, and improperly removed (stole) additional items; because Mr. Dawson took all of the property that was his from the martial home in February

9

2018 he had no interest in the remaining property; and, it follows that thereafter, in April 2018, he did not have an insurable interest in the property that he subsequently stole.[4] (Doc. # 24 at 4).

Plaintiff's attempt to support this argument with Alabama case law is unavailing. (Doc. # 24 at 6–8). The cases cited by Plaintiff are distinguishable from the allegations and claims here. (*Id.*); *Allstate Insurance Company v. Moore*, 429 So. 2d 1087 (Ala. 1983) (holding that where husband lost his insurable interest in automobile, the automobile insurer (which provided coverage for former husband as named insured and wife as resident spouse) was not required to provide coverage to wife, as her husband lost his insurable interest in the policy when ownership of the automobile was transferred per the separation agreement); *McKinney v. State Farm Mut. Auto. Ins. Co.*, 349 So. 2d 1091 (Ala. 1977) (holding on similar facts that where an automobile insurance policy listed wife as insured and husband as additional operator, the couple divorced and wife gave husband bill of sale to automobile, wife was dispossessed of insurable interest; thus, insurer was not liable for default judgment rendered against husband in action arising from accident caused by husband's operation of automobile); *Rogers v. Lubermans Mutual Casualty Co.*, 124 So. 2d 70 (1960) (holding on similar facts that after transfer of insured automobile by the named insured to

---

[4] To support her argument, Plaintiff relies on Alabama Code § 21-14-4, which provides:

(a) No contract of insurance of property or of any interest in property, or arising from property, shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.

(b) "Insurable interest," as used in this section, means any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment.

(c) The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury, or impairment thereof.

his estranged wife, insured no longer had insurable interest in automobile which would sustain insurance, and policy issued to him was voided by such transfer).

Plaintiff argues that in light of *Moore*, *McKinney*, and *Rodgers*, the particular language of the policy, which designated Mr. Dawson as a named insured, is not relevant to the instant inquiry. Rather, Plaintiff contends, because Mr. Dawson had no insurable interest in the property at the time, and so "by operation of law, could not be an insured" and "Alabama courts have held that lack of an insurance interest cannot be waived." (Doc. # 24 at 7). But, Plaintiff's argument confuses two separate issues.

In *Moore, McKinney* and *Rodgers,* the Alabama Supreme Court considered automobile insurance policies where the title to a covered automobile was transferred from the insured to a non-insured. In all three cases, the policies listed one spouse as a named insured and the other spouse was only covered by virtue of his or her status as a resident of the spouse's abode. When the parties subsequently divorced, the ex-spouse was no longer covered because they no longer qualified as a "resident spouse." Here, Mr. Dawson was listed on the homeowner's policy as a separate named insured. Unlike in *Moore*, *McKinney*, and *Rodgers*, Mr. Dawson was not covered by virtue of his status as a resident spouse. Rather, because he was listed on the policy as a named insured he undeniably has an insurable interest in the policy. Indeed, Plaintiff acknowledges that Mr. Dawson retained an "interest in any excess sales proceeds from the real estate itself." (Doc. # 24 at 6).

### iii. Intentional Loss Exclusion

Even if Plaintiff's claims are not precluded under the policy's theft peril provision, Defendant alternatively argues that Plaintiff's breach of contract claim is prohibited by the policy's intentional loss exclusion. The intentional loss exclusion prohibits coverage for "any loss

arising out of any act committed by or at the direction of an 'insured' with the intent to cause a loss." (Doc. # 22, Exh. A). Defendant is correct.

Plaintiff's primary allegation is that "Mr. Dawson without permission from [Plaintiff], threw a brick through the window at [Plaintiff's] residence, and burglarized the house taking items far and above what the divorce judgment awarded him." As discussed above, Mr. Dawson was undisputedly a named insured on the policy. And, under either the primary pleading or alternative pleading, Plaintiff's argument is that Mr. Dawson entered the marital home and took items (that may have belonged to him). (*See* Doc. # 21 at 3 ) ("Mr. Dawson denies that he took items not belonging to him."). When applying the intentional loss exclusion, Plaintiff's argument is still this: a named insured (Mr. Dawson) broke into the marital home and took property. As such, Mr. Dawson's forced entry and subsequent "theft" of property are precluded as an intentional act under the policy.

## IV. Count II – Bad Faith Refusal to Pay

Under Alabama law, the tort of a bad-faith refusal to pay claim has four elements:

> (a) [A] breach of insurance contract, (b) the refusal to pay claim, (c) the absence of arguable reason, (d) the insurer's knowledge of such absence—with a conditional fifth element: (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim. Thus, for the tort of bad-faith refusal to pay, "[r]equirements (a) through (d) represent the 'normal' case. Requirement (e) represents the 'abnormal' case." But the tort has always been *one*.

*State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013) (internal citations and punctuation omitted). As outlined by the *Brechbill* court, the tort of bad faith has two different options for proof: (1) proof of a "normal" bad faith claim; or (2) proof of an "abnormal" bad faith claim. A "normal" case is also referred to as bad-faith refusal to pay, while an "abnormal" case is known as bad-faith refusal to investigate. Plaintiff's claim in the instant case is a "normal" bad

12

faith refusal to pay claim. The Plaintiff alleging the tort of bad faith bears the burden of establishing each element of the claim. *Shelter Mutual Ins. Co. v. Barton*, 822 So. 2d 1149, 1154 (Ala. 2001) (citations omitted) ("The Plaintiff asserting a bad-faith claim bears a heavy burden.").

Here, Plaintiff's bad-faith claim is foreclosed by her failure to sufficiently plead Defendant's breach of contract. *See Quick v. State Farm Mut. Auto. Ins. Co.*, 429 So. 2d 1033, 1035 (Ala. 1983) (finding "there can be no breach of a[] [] contract, and therefore no bad faith, until the insured proves that he is legally entitled to recover."). As previously discussed, Plaintiff's breach of contract allegations do not state a claim. Without a viable breach of contract claim, Plaintiff cannot maintain a claim for bad faith refusal to pay.

V. **Conclusion**

After careful analysis, and for the reasons discussed above, Defendant's Motion to Dismiss (Doc. # 22) is due to be granted. Plaintiff will be given one final chance to amend her claims, but must take into account the court's guidance expressed in this opinion. An order consistent with this Memorandum Opinion will be entered contemporaneously.

**DONE** and **ORDERED** this February 5, 2020.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE